April M. Linscott, ISB #7036
OWENS, McCREA, & LINSCOTT, PLLC
8596 N. Wayne Dr., Ste. A
Hayden, Idaho 83835
Phone:     (208) 762-0203
Fax:        (208) 762-0303
Email:     alinscott@omllaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANA MADDOX on behalf of D. M. and D. M., and RAYMOND FOSTER on behalf of H. F., minor children and heirs of JEANETTA RILEY, deceased, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SANDPOINT, a political subdivision of the State of Idaho, CITY OF SANDPOINT POLICE DEPARTMENT, a department of the City of Sandpoint, SKYLAR CARL ZIEGLER, in his individual and official capacity, MICHAEL HENRY VALENZUELA, in his individual and official capacity, COREY COON, in his individual and official capacity, JOHN or JANE DOE #1-10 Employees of the Sandpoint Police Department, and SHANE RILEY, an heir of JEANETTA RILEY, deceased, <br><br> Defendants. | Case No. 2:16-cv-00162 <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY TRIAL REQUESTED** |

## <u>INTRODUCTORY STATEMENT</u>

1.      This is a civil rights action pursuant to 42 U.S.C. § 1983, filed by Plaintiffs for

violations of the use of excessive force, pursuant to the Fourth and Fourteenth Amendments to

the United States Constitution.  The Plaintiffs also allege claims under Title II of the Americans with Disabilities Act pursuant to 42 U.S.C. § 12132 *et seq*.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' claim of violations of federal constitutional rights pursuant to 28 U.S.C. § 1331 and § 1343.  This action is authorized and instituted pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12132 *et seq*.

3.     This Court has jurisdiction over Plaintiffs' state law claims set forth in this Complaint, pursuant to supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a).  Both federal and state claims alleged herein arose from a common nucleus of operative facts, the state actions are so related to the federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

4.     Actions complained of herein took place within the jurisdiction of the United States District Court, District of Idaho, in that one or more of the Defendants reside in Idaho and Plaintiffs' claims for relief arose in this District.  Accordingly, venue in this judicial district is proper under 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff, DANA MADDOX is the natural father and general guardian of minor children D. M. and D. M.  D. M. and D. M. are the natural children and heirs of the deceased, JEANETTA RILEY.

6.     Plaintiff, RAYMOND FOSTER is the natural father and general guardian of minor child H. F.  H. F. is the natural child and heir of the deceased, JEANETTA RILEY.

7.     Defendant, CITY OF SANDPOINT ("Sandpoint"), is a political subdivision of the State of Idaho.  As a local governmental entity, Sandpoint is a suable person under 42 U.S.C. § 1983.  At all times relevant to this Complaint, Sandpoint employed several of the Defendants (police officers) through the Sandpoint Police Department and several of Defendants Does.  At all times relevant to this Complaint, Defendants and Does were acting pursuant to Sandpoint's laws, customs, and/or policies.  As the employer of Defendants and Does, Sandpoint is vicariously liable for all of the tortious and unconstitutional acts and omissions of the Defendants and Does, committed within the course and scope of their employment.

8.     Defendant, CITY OF SANDPOINT POLICE DEPARTMENT ("Police Department"), is a department within Sandpoint.

9.     Defendant, SKYLAR CARL ZIEGLER ("Ziegler"), was at all times relevant hereto acting under the color of state law as an employee and police officer of the Police Department.  Defendant Ziegler is sued in his individual and official capacity.

10.     Defendant, MICHAEL HENRY VALENZUELA ("Valenzuela"), was at all times relevant hereto acting under the color of state law as an employee and police officer of the Police Department.  Defendant Valenzuela is sued in his individual and official capacity.

11.     Defendant, COREY COON ("Coon"), was at the time of the events, and now is, the Chief of the Police Department.  Defendant Coon is sued in his individual and official capacity.

12.     Defendant, SHANE RILEY ("Shane"), was at all times relevant hereto the husband of and an heir to the deceased JEANETTA RILEY.  Shane, as heir, is a person required to be joined, as his absence may leave a party subject to a risk of incurring inconsistent obligations if his interests are not represented in this suit.  Plaintiffs do not have the ability force Shane to become a plaintiff; therefore, Shane is joined as a defendant, pursuant to Federal Rule of Civil Procedure 19.

COMPLAINT FOR DAMAGES - 3

13.     Defendants, JOHN AND/OR JANE DOES #1-10 ("Does"), were at all times members of the Police Department.  At all material times, Defendants Does were working under the color of law.  Defendants Does are each sued in their individual and official capacities and will be named as discovery is obtained.

14.     Plaintiffs served a timely tort claim notice in compliance with the Idaho Tort Claims Act.

15.     Plaintiffs are entitled to an award of fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

## FACTUAL BACKGROUND

16.     On July 8, 2014, Shane Riley drove his wife Jeanetta Riley to Bonner General Hospital.  Jeanetta was exhibiting suicidal behavior and Shane was afraid for her life.  This was not the first time that Jeanetta exhibited suicidal tendencies.

17.     Jeanetta had a history of mental health issues which issues were generally well known in the community.

18.     When the Rileys arrived at the hospital, Shane was unable to get Jeanetta out of the car.  The car was parked parallel to the sidewalk.  Shane went into the hospital and asked the E/R staff to call 911.  He informed them that Jeanetta was suicidal, had a knife, and was threatening to harm herself or others.

19.     The hospital employee called 911 and put the hospital in lockdown.

20.     In response to a 911 call from the hospital employee, three uniformed officers were dispatched to Bonner General Hospital, in two fully marked vehicles.  The officers were made aware that the hospital was in lockdown.

21.     Zieger was first on the scene.  He exited his vehicle armed with a taser and a handgun.  Valenzuela and Johnson arrived right after Ziegler.  Valenzuela exited the second vehicle armed with an assault rifle.  Johnson was armed with a handgun and a taser.

22.     Records indicate that Ziegler arrived on scene at 21:15:06.  One minute later, at 21:16:20 an officer radioed that shots were fired.   Jeanetta was shot and killed by Ziegler and Valenzuela.  During the one minute that they were at the scene, each officer took different actions.

23.     Johnson chose to approach Jeanetta from the sidewalk.  He had his gun drawn. When interviewed, Johnson stated that Jeanetta was walking toward him on the sidewalk.  Her hand was down by her side.  He could see that she was carrying a knife in her hand.  She was holding the knife with the blade back.  Johnson stated that he did not feel threatened by Jeanetta.

24.     Valenzuela and Ziegler chose to approach Jeanetta from the street at the same time that Johnson approached Jeanetta from the sidewalk.  Ziegler was initially armed with a taser. However, he switched to his handgun.  Valenzuela was armed with an assault rifle.

25.     Valenzuela and Ziegler screamed commands at Jeanetta while approaching her with their weapons drawn.

26.     When Jeanetta heard the screams from Valenzuela and Ziegler, she turned from Johnson and stepped off the curb toward Valenzuela and Ziegler.

27.     When interviewed, Ziegler stated that he originally had his taser dot on Jeanetta's chest.  He then said that she dropped the knife.  The interviewer asked Ziegler to change his statement to say that Jeanetta still had the knife.  Ziegler complied.  Ziegler also stated at one point during questioning that Jeanetta had also dropped her hands prior to dropping the knife.

28.     Once Jeanetta stepped into the street, Valenzuela fired at her three times and Ziegler fired twice.  These five rounds were all fired in less than one second.

COMPLAINT FOR DAMAGES - 5

29.     The three officers were questioned about the location of the knife after Jeanetta fell to the street.  Jeanetta fell close to the curb.  Her feet were either touching the curb or close to the curb with her head positioned more toward the street.  Valenzuela and Ziegler stated that they did not touch the knife, but noticed later that it was located in center of the street.

30.     Johnson said that he approached Jeanetta immediately after the shooting, and as she was lying on the ground, he saw the knife and kicked it into the center of the street.  Prior to kicking the knife, the knife was located farther from Jeanetta than it would have been had she dropped it as she fell.

31.     Either Valenzuela or Ziegler placed handcuffs on Jeanetta as she lay bleeding in the street.  The handcuffs remained on her until emergency medical personnel arrived at the scene and asked that the handcuffs be removed so that aid could be administered.

32.     After Johnson kicked the knife into the street, he focused his attention on Shane.  He held Shane on the ground with a knee to his back and placed handcuffs on him.  After searching Shane, Shane was placed in a patrol car.  Shane witnessed the entire event.

33.     Later, Shane was taken to the Police Department.  It was not until he was questioned, sometime around 1:00 a.m., that he was finally told whether his wife survived.

34.      At the time the Officers initially arrived on the scene, there was no emergent need to approach Jeanetta.  Other than Jeanetta's husband, who was not in any immediate danger, there were no other individuals in the vicinity.  Further, the hospital was in lockdown.

35.     The Officers needlessly escalated the situation without taking any of Jeanetta's mental health issues into consideration.

36.     Early in the day, Valenzuela and Johnson responded to another incident involving a knife.  When questioned regarding the earlier incident, Johnson implied that Sandpoint's policy related to knives is lethal force and can always be defended against with lethal force.

37.     Jeanetta was survived by her husband and three children.  She was 34 years old. Jeanetta was also pregnant at the time she was shot.  She was approximately 5 feet tall and weighed close to 100 pounds.

38.     At the time of Jeanetta's death, H. F. was 13.  Shortly after the shooting, an officer interviewed H. F. without any other adult present.  During the interview, the officer informed H. F. that her mom did drugs.  When the officer questioned if H. F. was aware of the drug use, H. F. responded no.

39.     The Plaintiffs have experienced severe emotional distress as a result of the wrongful killing of their mother.

40.     At all times relevant hereto, Sandpoint and the Chief of Police, Corey Coon were legally responsible for the management of the Police Department, including establishing and implementing policies, procedures and protocols governing the conduct of police officers.

41.     At all times relevant hereto, Sandpoint and Chief of Police, Corey Coon were responsible for screening, hiring, training and supervising their employees.

**<u>FIRST CLAIM FOR RELIEF: Excessive Force</u>**

**42 U.S.C. § 1983: Violation of the 4th and 14th Amendment against Defendants**

42.     Plaintiffs incorporate by reference paragraphs 1 through 41 as though fully set forth herein.

43.     The wrongful conduct of the Police Officers, the Police Department and Sandpoint constitute violations under the color of state law and 42 U.S.C. 1983, in that with

deliberate and callous indifference to a known right, Defendants deprived Jeanetta of the rights, privileges and immunities secured by the Constitution of the United States.

44.     Jeanetta was entitled to be safe and secure from undue and unreasonable force.

45.     The acts and omissions of Defendants in using extreme force on Jeanetta violated the requirements of the 4th and 14th Amendment rights held by Jeanetta, to be free from excessive unconstitutional use of force.

46.     The specific actions of Defendants, individually and in concert with each other, alleged to be violations of Jeanetta's protected rights are more particularly set forth below:

    a.      Defendants used extreme physical force against Jeanetta, which resulted in death;

    b.      Defendants knew, or should have known, that actions utilizing significantly less force could have been used effectively to detain Jeanetta;

    c.      Defendants failed to utilize an objectively reasonable assessment of the facts when they decided to use weapons against Jeanetta, and ultimately used excessive force against Jeanetta; and

    d.      None of the officers attempted to use a degree of force less than excessive physical force, and the choice to use such lesser degree of force was objectively reasonable under the circumstances.

47.     All Defendants' conduct was well defined by law and each Defendant knew, or reasonably should have known, that their conduct was not only well below the standard prescribed by law, but was illegal per se.

48.     As a result of the violations of the Constitutional standards set forth herein, Jeanetta was wrongfully killed, and her children suffered emotional and mental trauma.  The extent of Plaintiffs' damages will be more fully proven at trial.

49.     Plaintiffs were required to hire attorneys to represent them in this matter and are thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Monell Liability

50.     Plaintiffs incorporate by reference paragraphs 1 through 49 as though fully set forth herein.

51.     Defendants Sandpoint and the Police Department either adopted an official policy or had a longstanding practice or custom which constitutes a policy or ratified actions, which ratification amounted to a policy in violation of Jeanetta's constitutional right to be free from excessive force.

52.     Defendants Sandpoint, the Police Department and the Chief of Police, Corey Coon failed to train their police force regarding individual's constitutional rights to be free from excessive force.

53.     Said Defendants' failure to properly train the police force amounts to a deliberate indifference to the rights of persons with whom the police force come into contact.

54.     Had Valenzuela and Ziegler been properly trained regarding use of force, Jeanetta would not have been killed.

55.     As a result of said Defendants' policy, customs and failure to train, Jeanetta was wrongfully killed.

COMPLAINT FOR DAMAGES - 9

56.     As a result of the violations of the Constitutional standards set forth herein, Jeanetta was wrongfully killed, and her children suffered emotional and mental trauma.   The extent of Plaintiffs' damages will be more fully proven at trial.

## THIRD CLAIM FOR RELIEF

**42 U.S.C. § 12101, *et seq*.: Violation of the Americans with Disabilities Act**

57.     Plaintiffs incorporate by reference paragraphs 1 through 56 as though fully set forth herein.

58.     Jeanetta suffered from mental illness.   She was a member of the class of persons protected by the Americans with Disabilities Act ("ADA").

59.     Defendants Sandpoint, the Police Department, Ziegler and Valenzuela either knew, or should have known, of Jeanetta's disability.

60.     Jeanetta was denied benefits of a public entities service as defined in Title II of the ADA in that Defendants Sandpoint, the Police Department, Ziegler and Valenzuela were deliberately indifferent to the fact it was substantially likely that Jeanetta would be harmed without accommodation.

61.     Defendants Sandpoint and the Police Officers failed to use practices designed to minimize the risk of violence in dealing with mentally ill persons.   Those practices include, but are not limited to:

- Respecting Jeanetta's comfort zone.

- Securing the scene.

- Engaging in non-threatening communications.

- Using the passage of time rather than precipitating a deadly confrontation.

- Relying on professionals trained in the art of counseling.

COMPLAINT FOR DAMAGES - 10

62.     As a result of the violations of the ADA as set forth herein, Jeanetta was wrongfully killed, and her children suffered emotional and mental trauma.  The extent of Plaintiffs' damages will be more fully proven at trial.

63.     Plaintiffs were required to hire attorneys to represent them in this matter and are thus entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

## SUPPLEMENTAL STATE CLAIMS

## FOURTH CLAIM FOR RELIEF

### Wrongful Death/Negligence Against City of Sandpoint, Sandpoint Police Department, and all individual Defendants

64.     Plaintiffs incorporate by reference paragraphs 1 through 63 as though fully set forth herein.

65.     Defendants Sandpoint and the Police Department are liable for damages arising out of the negligent or otherwise wrongful acts or omissions of their employees acting in the course and scope of their employment.

66.     Defendants Ziegler and Valenzuela were at all times relevant hereto acting in the course and scope of their employment.

67.     Defendants Ziegler and Valenzuela failed to exercise ordinary care in performing the daily operational function of taking a person into custody.

68.     The actions of Defendants Ziegler and Valenzuela were intentional and they knowingly created a situation which put Jeanetta into a position of unreasonably high probability that she would be killed.

69.     The actions of Defendants Ziegler and Valenzuela caused Jeanetta's death.

70.     Defendants Sandpoint, the Police Department, Coon, Ziegler and Valenzuela are liable for the damage they caused, in an amount to be determined at trial.

## PRAYER FOR RELIEF

A.     On all claims for relief, Plaintiffs pray for judgment finding that their protected constitutional rights were violated;

B.     Findings that Defendants used excessive force on Jeanetta Riley;

C.     For general and specific damages against all Defendants in amounts to be determined at trial;

D.     For wrongful death damages, survival damages, punitive damages, negligent infliction of emotional distress damages, and all other damages available under state and federal law;

E.     An award of all other damages as is just and according to the proof; and

F.     Award Plaintiffs their reasonable attorney fees and costs against all Defendants.

**Plaintiffs demand a jury trial on all questions of fact or combined questions of law and fact raised by this Complaint.**

DATED this 29th day of April, 2016.

OWENS, McCREA & LINSCOTT, PLLC


/s/April M. Linscott
APRIL M. LINSCOTT, ISB#7036
Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES - 12