# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANA MADDOX on behalf of D.M and D.M., and RAYMOND FOSTER on behalf of H.F., minor children and heirs of JEANETTA RILEY, deceased;<br><br>SHANE RILEY, an individual, and as Personal Representative, heir and husband to the deceased, and on behalf of their unborn child,<br><br>     Plaintiff,<br><br>     v.<br><br>CITY OF SANDPOINT, a political subdivision of the State of Idaho, CITY OF SANDPOINT POLICE DEPARTMENT, a department of the City of Sandpoint, SKYLAR CARL ZIEGLER, in his individual and official capacity, MICHAEL HENRY VALENZUELA, in his individual and official capacity, GARRET L. JOHNSON, in his individual and official capacity, COREY COON, in his individual and official capacity, JOHN OR JANE DOES #1-10, Employees of the Sandpoint Police Department, and ROSEMARY BRINKMEIR and BONNER CUNTY GENERAL HOSPITAL,<br><br>     Defendants. | Case No. 2:16-cv-00162-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Before the Court is Defendants' Motion for Summary Judgment (Dkt. 55). Although Defendants moved for summary judgment on all claims, the parties agreed by stipulation to first resolve the question of whether the Defendant officers are entitled to qualified immunity. (Dkt. 56). Briefing on the issue of qualified immunity was completed on January 30, 2016. The Court heard oral argument on March 9, 2017, and took the matter under advisement. For the reasons explained below, the Court finds that the Defendant officers are not entitled to qualified immunity, and thus will deny Defendants Motion for Summary Judgment.

**BACKGROUND**

On July 8, 2014, police officers with the City of Sandpoint Police shot and killed Jeanetta Riley outside the Bonner General Hospital in Sandpoint. *Def.'s Br.* at 3, Dkt. 55-1. At approximately 9:13 pm, Defendant Officers Skylar Ziegler, Michael Valenzuela, and Garret Johnson responded to a 911 radio call from dispatch reporting a possible weapons offense. *Johnson Aff.* ¶ 8-9, Dkt. 55-7. Dispatch reported there was a female outside the Bonner General with a knife, threatening to kill people. *Coon Aff.* Ex. E at 21:12:51, Dkt. 55-3. Officers Ziegler, Valenzuela, and Johnson responded to the scene in two patrol cars with their lights and sirens on. *Ziegler Aff.* ¶ 8, Dkt. 55-9. While en route to the hospital, dispatch advised that they received a panic alarm call and two additional calls from emergency room staff, again reporting that "the suspect is female, the male reported her as having a knife and wanting to kill people." *Id.*

Officer Ziegler arrived on the scene first. *Id.* at 5. Officers Valenzuela and Johnson arrived shortly thereafter in the same patrol vehicle. *Id*. Immediately upon arriving, the officers observed Shane Riley walking across the street, pointing back towards a white van. *Valenzuela Aff.* ¶ 14, Dkt. 55-8. On video, Jeanetta Riley can be seen seated in the passenger seat of that white van when Office Ziegler arrived. *Coon Aff.* Ex. C at. 2:34, Dkt. 55-3. The passenger door was open. *Id.* There was no one else present. *Id.*

Officer Ziegler exited his vehicle with his sidearm drawn, and yelled for Jeanetta to "walk over here" and to "show me your hands." *Ziegler Aff.* ¶ 16, Dkt. 55-9; *Coon Aff.* Ex. D at 1:49, Dkt. 55-3. Officer Valenzuela exited the other vehicle with his assault rifle drawn and began to approach Jeanetta from the street. *Valenzuela Aff.* ¶ 16, Dkt. 55-8; *Coon Aff.* Ex. B at 3:04, Dkt. 55-3. Officer Ziegler then began to approach Jeanetta, also from the street. *Coon Aff.* Ex. D at 1:51, Dkt. 55-3. Officer Johnson exited his vehicle with his sidearm drawn, and he and Officer Valenzuela both yelled at Jeanetta to "show me your hands." *Johnson Aff.* ¶ 14, Dkt. 55-7; *Valenzuela Aff.* ¶17, Dkt. 55-8. Jeanetta responded "F*** you," but at some point, raised her hands and began walking towards Officer Johnson as he approached her along the sidewalk. *Id*; *Coon Aff.* Ex. B at 3:09, Dkt. 55-3. In her right hand, Jeanetta had a filet knife with a four-and-a-half-inch blade. *Coon Aff.* Ex. F at 8-9, Dkt. 55-5.

As Officers Ziegler and Valenzuela approached Jeanetta, they continued to yell for her to "show me your hands." *Coon Aff.* Ex. B at 3:06, Dkt. 55-3. Office Johnson yelled for Jeanetta to "drop the knife," and she responded "No!" and continued to walk towards

him. *Johnson Aff.* ¶ 15, Dkt. 55-7; *Coon Aff.* Ex. B at 3:10, Dkt. 55-3. At the same time,

Officer Ziegler re-holstered his sidearm and drew his taser. *Ziegler Aff.* ¶ 16, Dkt. 55-9;

*Coon Aff.* Ex. B at 3:10, Dkt. 55-3. Officers Valenzuela and Ziegler continued to

approach Jeannetta, again yelling at her to "drop the knife," while Officer Ziegler brought

his taser up and pointed it at Jeanetta. *Coon Aff.* Ex. B at 3:11, Dkt. 55-3, Ex. F at 8, Dkt.

55-5. Jeanetta yelled "Bring it on." *Coon Aff.* Ex. B at 3:12, Dkt. 55-3. At some point,

Jeanetta changed course and began walking towards Officers Ziegler and Valenzuela.

After Jeanetta turned away, Officer Johnson saw a taser dot on her and reached for his

own taser. *Linscott Decl.* Ex. C at 6, Dkt. 61-3.

Officers Valenzuela and Ziegler again yelled at Jeanetta to "drop the knife," and

continued to approach her. *Coon Aff.* Ex. B at 3:13, Dkt. 55-3. Jeanetta responded again

"No." *Id.* at 3:14. Officer Ziegler still had his taser pointed at Jeanetta. *Id.* Either Officer

Valenzuela or Officer Ziegler again yelled for Jeanetta to "drop the knife." *Id.* The

officers reversed course and began to back away, and Officer Ziegler lowered his taser

and raised his service weapon. *Id.* at 3:15. Jeanetta responded again, louder, "No!" *Id.* at

3:16.

Officer Valenzuela fired his assault rifle three times, striking Jeanetta once in the

sternum and once in the right shoulder. *Id.* At 3:16; *Coon Aff.* Ex. F at 8, Dkt. 55-5.

Jeanetta fell forward and the knife bounced against the ground and flew into the street. *Id.*

Officer Ziegler fired his sidearm twice, striking Jeanetta once in the back. *Id.* Officer

Valenzuela's shot striking Jeanetta's sternum was fatal, as was Officer Ziegler's shot striking her back. *Coon Aff.* Ex. F at 8, Dkt. 55-5.

Plaintiffs' filed suit under 42 U.S. § 1983, claiming the Defendant officers used excessive force against Jeanetta in violation of her Fourth Amendment rights, among other claims. *Am. Compl.* at 8. Defendants filed a Motion for Summary Judgment, asserting they were entitled to qualified immunity with respect to Plaintiffs' § 1983 claims.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011).

To determine whether an officer is entitled to qualified immunity, the Court must ask whether the facts alleged, taken in the light most favorable to the plaintiff, show "(1) ... the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his or her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). Courts may use their discretion deciding which of the two prongs to analyze first. *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

**1.      Violation of a Constitutional Right**

The use of force, deadly or not, violates the Fourth Amendment when it is "objectively unreasonable." *Torres*, 648 F.3d at 1123. Courts analyze the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  If the use of force is reasonable, "taking into account all relevant circumstances," there is no constitutional violation. *County of Los Angeles v. Mendez*, 137 S.Ct. 1539, 1547 (2017).

The "settled and exclusive framework" for determining the reasonableness of excessive force is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Mendez*, 137 S.Ct. at 1546. The Court must balance "the type and

amount of force inflicted" against "the importance of the government interests at stake." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). As outlined in *Graham*, in analyzing the governmental interest, the Court must consider "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest." *Id.* at 964.

The *Graham* factors are not exclusive. See *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). Rather, the Court must examine "the totality of the circumstances and . . . whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (internal quotations and citations omitted). Relevant factors may include "whether officers gave a warning before employing the force" and "whether there were less intrusive means" the officers may have used. *Glenn v. Washington Cnty.*, 673 F.3d 864, 876 (9th Cir. 2011). Finally, the analysis may include whether the officers engaged in "unreasonable conduct prior to the use of force that foreseeably created the need to use it." *Mendez*, 137 S.Ct. at 1547, fn. *.[1]

---

[1] The Supreme Court held in *Mendez* that when a court determines the use of force was reasonable under *Graham*, there is no excessive force claim. It rejected the Ninth Circuit's "provocation rule," established in *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), which "instructs the court to ask whether the law enforcement officer violated the Fourth Amendment in some other way in the course of events leading up to the seizure." *Mendez*, 137 S.Ct. at 1546. The Court held that because the provocation rule comes into play only after a determination that the use of force was otherwise reasonable under *Graham*, it "manufacture[d] an excessive force claim where one would not otherwise exist." *Id.* The Court held open the question of whether courts should consider unreasonable conduct by a law enforcement officials prior to the use of force as part of the totality of the circumstances under the *Graham* analysis. *Id.* at 1547, fn. *.

The reasonableness of a particular use of force cannot be determined through the application of mechanical rules because reasonableness must "be assessed by carefully considering the objective facts and circumstances confronting the officers," *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). As such, determining whether a particular use of force was unreasonable is a highly fact specific inquiry.

On summary judgment, the Court must draw factual inferences in favor of the nonmoving party, and "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014. "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith*, 394 F.3d at 701. However, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiffs, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

"A simple statement by an officer that he fears for his safety or the safety of others is not enough, there must be objective facts to justify such concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Though direct factual evidence is often one-sided in a deadly force case because "the officer defendant is often the only surviving eyewitness," *Henrich*, 39 F.3d at 915, here there are witnesses on both sides able to give competent evidence as to the material facts at issue. Because these witnesses "come to

this case with their own perceptions, recollections, and even potential biases . . . genuine disputes are generally resolved by juries in our adversarial system." *Tolan v. Cotton*, 134 S.Ct. at 1868.

### A.     *Type and amount of force used*

The use of deadly force constitutes a seizure for the purposes of the Fourth Amendment, the intrusiveness of which is "unmatched." *Tennessee v. Garner*, 471 U.S. 1, 7, 9 (1985). Although it is uncontested that the Defendant officers used deadly force against Jeannetta, the use of deadly force is not per se unreasonable. *Id.* at 9. Rather, the use of deadly force is reasonable only where "at a minimum, the suspect presents an immediate threat to the officers or others." *Harris v. Roderick*, 126 F.3d 1189, 1201 (1997

### B.     *Importance of the governmental interest at stake*

As suggested by *Harris*, evidence that a suspect posed an immediate threat to the officers is necessary to support the reasonable use deadly force, but may not be sufficient under the totality of the circumstances. Because the threat posed by the decedent is the "most important factor" under the *Graham* analysis, *Mattos*, 661 F.3d at 445, the Court begins its analysis there.

### (1)     Immediate threat to the safety of officers or others

Defendants do not argue that Jeanetta posed an immediate threat of harm to the officers or anyone else at the time the officers arrived on the scene. Dispatch reported a female outside the hospital with a knife, making threats. *Ziegler Aff.* ¶ 7, Dkt. 55-9. But

the officers had no reason to believe that Jeanetta had attacked anyone, or that she had

taken any action other than making nonspecific verbal threats. *Linscott Decl.* Ex. C at 11,

Dkt. 61-3. When the officers arrived, Jeanetta was sitting in the van with Shane Riley

standing beside her, and there was no one else present. *Coon Aff.*, Ex. C at 2:34, Dkt. 55-

3. There was no evidence that Jeanetta had made any effort to carry out her threats, or

that any person was actually threatened. The officers could see Mr. Riley standing by the

car, then walking across the street and pointing back at the van. *Id*. Reviewing the video

evidence in the light most favorable to Plaintiffs, there was no apparent danger to Mr.

Riley, he appeared calm, and his actions lacked urgency. *Id.* Mr. Riley does not appear to

be injured in any way. *Id.* Under these circumstances, it would be unreasonable to infer

that Jeanetta presented an immediate threat to the officers, or to anyone else, when they

arrived.

Fifteen seconds later, Officers Valenzuela and Ziegler shot Jeanetta. *Coon Aff.* Ex.

C at 2:34-2:49. At that time, Defendants argue it was reasonable for Officers Valenzuela

and Ziegler to conclude that Jeanetta presented an immediate threat on the basis of her

prior statements about wanting to kill people, her verbal aggression, her refusal to drop

the knife, her "aggressive" and continued approach towards the officers, and her physical

proximity. The Court will analyze each of these factors in turn.

### (a) Prior threats

Defendants argue that Jeanetta's prior threats supported the officers' reasonable

belief that she posed an immediate threat of harm at the time they shot her. Officers had

knowledge of Jeanetta's threats from two separate reports from dispatch. In the first report, dispatch stated that a man reported his wife was outside the hospital "threatening to kill people." *Coon Aff.* Ex. E at 21:13:15. In the second, dispatch stated the man reported his wife as "having a knife and wanting to kill people." *Coon Aff.* Ex. E at 21.25.06. It was not unreasonable for the officers to take these threats seriously while en route to the scene. Upon arriving, however, the officers observed Jeanetta sitting in the van, with Shane Riley standing next to her, and no one else around. *Coon Aff.* Ex. C at 2:34, Dkt. 55-3. There was no evidence she tried or even intended to approach the hospital, and the only person she was directly in contact with appeared unharmed, and calm. *Id.* These facts undercut the seriousness of her threats. A jury could conclude that a reasonable officer would infer that Jeanetta did not intend to immediately act upon her threats, and that her threats likely stemmed from something other than an immediate intention to do harm. Thus, Jeanetta's prior threats provide only limited support for a later belief that Jeanetta posed a threat to the officers.

*(b) Verbal aggression*

Standing alone, verbal aggression does not reasonably support an officer's conclusion that a suspect poses an immediate threat. *See Tolan*, 134 S.Ct. at 1867. In *Tolan*, the Fifth Circuit found that the victim of a police shooting was "verbally threatening" when he yelled "get your f***ing hands off my mom," and thus it was reasonable for the officer to deem him an immediate threat. *Id.* at 1867. But the Supreme Court vacated the decision, finding that the Fifth Circuit improperly weighed this

evidence in favor of the moving party. *Id.* Instead, the Court held that "a jury could well have concluded that a reasonable officer would have heard [the] words not as a threat, but as a son's plea not to continue any assault of his mother." *Id.*

As in *Tolan*, Jeanetta did not make any explicit verbal threats against the officers, or any other person. It is undisputed, however, that Jeanetta was verbally aggressive, yelling "F*** you!" and "Bring it on!" at different points throughout the encounter. Although Defendants describe her statements as a verbal "challenge" rather than a threat, *Def.'s Br.* at 19, Dkt. 55-1, Officer Ziegler stated that he became "scared for his life" when Jeanetta yelled "Bring it on!" and that her words contributed to his belief that Jeanetta intended to harm him. *Ziegler Aff.* ¶ 19-20, Dkt. 55-9. In contrast, Shane Riley stated that he understood his wife's words to mean "go ahead and shoot, not [sic] I am going to attack you." *Riley Decl.* ¶ 8, Dkt. 64. Thus, two observers of Jeanetta's behavior and statements drew markedly different conclusions as to her intention. For that reason, the Court finds a genuine issue of material fact as to whether Jeanetta's verbal aggression could reasonably be interpreted as a threatening the officers. Looking at the evidence in the light most favorable to the plaintiffs, a jury could find that a reasonable officer would infer that Jeanetta's verbal challenge "did not amount to a statement of intent to inflict harm," but was rather an invitation for the officers to harm Jeanetta. *Tolan*, 134 S.Ct. at 1867. As such, this circumstance weighs against a finding that Jeanetta posed an immediate threat to the officers.

*(c) Refusal to drop the knife*[2]

An officer cannot reasonably use deadly force against a person merely because they possess a weapon. *See Harris v. Roderick*, 126 F.3d 1189, 1202 (finding that no reasonable officer could believe it is constitutional to shoot an armed person regardless of whether that person posed an immediate threat to the officers or any other persons). In combination with other relevant circumstances, however, refusal to comply with orders to drop a weapon may support a reasonable belief that a suspect poses an immediate threat. *See Blanford v. Sacramento County*, 406 F.3d 1110, 1116 (2005) (finding that a suspect's refusal to comply with commands to drop his sword supported officers' reasonable belief that a suspect was posed an immediate threat).

Defendants do not argue, however, that Officers Valenzuela and Ziegler shot Jeanetta merely because she held a knife. Rather, Defendants argue that Jeanetta's refusal to comply with the officers' commands to "drop the knife" was evidence of her intent to cause them harm. *Def.'s Br.* at 12, Dkt. 55-1. Thus, the Court finds that Jeanetta's ongoing refusal to comply with the officers' commands to "drop the knife" is a

---

[2] Citing inconsistent testimony by Officers Ziegler and Johnson, Plaintiffs' contend there is a genuine dispute of material fact as to whether Jeanetta actually dropped the knife before the officers fired on her. *Pl.'s Br.* at 9, Dkt. 59. But the dash-cam video clearly shows the knife falling to the ground as Jeanetta fell, after being shot. *Coon Aff.* Ex. B at 3:16, Dkt. 55-3. The video evidence simply does not support Plaintiffs' contention that Jeanetta dropped the knife before the officers shot her, or at the least that she did so in time for the officers to comprehend that she was no longer armed. Thus, there is no genuine dispute as to whether Jeanetta dropped the knife. *See Witt v. W.Va. State Police*, 633 F.3d 272, 276-77 (4th Cir. 2011) ("When documentary evidence blatantly contradicts a plaintiff's account so that no reasonable jury could believe it, a court should not credit the plaintiff's version on summary judgment.") (internal quotations omitted) (citing *Scott v, Harris*, 550 U.S. 372, 378 (2007)).

circumstance that weighs in favor of finding a reasonable belief Jeanetta posed a threat to the officers.

*(d) "Aggressive" and continued approach toward the officers*

Defendants argue that it was reasonable for the officers to believe that Jeanetta posed an immediate threat to their safety because she aggressively approached the officers up until the point that Officers Valenzuela and Ziegler shot her. Defendants acknowledge that Jeanetta approached the officers "as commanded," but argue that the manner in which she complied with Officer Ziegler's instruction to "walk over here" supported a reasonable belief that she intended to harm the officers. *Def's Reply* at 6. Thus, the circumstance at issue is not whether Jeanetta posed a threat simply because she approached the officers, but whether her demeanor as she approached supported a reasonable belief that she posed a threat of harm.

Defendants rely on a Sixth Circuit case, *Chappell v. City of Cleveland* for the proposition that an objectively reasonable officer may employ deadly force when a suspect is quickly advancing towards the officer with a knife. *Def.'s Br.* at 12 (Dkt. 55-1). While this case is persuasive, it is distinguishable from the facts here. In *Chappell*, the officers stated that they felt threatened because the suspect was "moving quickly" and "almost lunging" at them, and refused to drop his knife. 585 F.3d 901, 911 (6th Cir, 2009). There were no witnesses to the decedent's behavior, and there was no evidence offered to contradict the officers' testimony. *Id.* at 910-12. The lower court denied summary judgment for the defendants, finding it plausible the decedent did not "charge"

the officers and may have tried to drop the knife. the Sixth Circuit reversed, holding that the lower court relied not on "specific facts" but on "plausible inferences drawn from the lack of conclusive evidence." *Id.* Here, both parties have produced specific, contradictory evidence in the form of statements describing Jeanetta's behavior.

Officer Johnson stated that Jeanetta approached him at a slower pace, and he did not feel "hyped or threatened," but became concerned for the safety of Officers Valenzuela and Ziegler when Jeanetta changed direction, "advance[d] quickly," and "began aggressing them." *Linscott Decl.* Ex. C at 7, Dkt. 61-3; *Johnson Aff.* ¶ 17, 22, Dkt. 55-7. Officers Valenzuela stated that after Jeanetta yelled "Bring it on!" her "pace increased and she was walking very quickly toward us" such that it was clear she had "no intention of stopping." *Valenzuela Aff.* ¶ 20-21, Dkt. 55-8. He also stated that she approached faster than he could back away. *Id.* Officer Ziegler stated that Jeanetta was "quickly approaching" and that "she had no intention of stopping." *Ziegler Aff.* ¶ 20-21, Dkt. 55-9. Both Officers Valenzuela and Ziegler characterized Jeanetta's demeanor as "aggressive." *Valenzuela Aff.* ¶ 20, Dkt. 55-8; *Ziegler Aff.* ¶ 20, Dkt. 55-9. Defendants alternately state that Jeanetta displayed the knife clearly in her hands, and that she "brandished" the knife. *See Def's Br.* at 10-11, Dkt. 55-1; *Def's Reply* at 6, Dkt. 67.

In contrast, Shane Riley stated that Jeanetta "never made a threatening move towards the officers besides walking towards them. She never placed the knife in threatening position. She never tried to attack any of the officers." *Riley Decl.* ¶ 8, Dkt. 64. Mr. Riley states that he "never saw any action by [Jeanetta] that would be considered

an attack or threatening." *Id.* ¶ 9. Finally, Mr. Riley states that Jeanetta's behavior indicated that she was trying to make herself a target, in anticipation that the officers would shoot her. *Id.* ¶ 8-9.

Where the parties submit conflicting evidence as to whether a suspect's behavior supports a reasonable belief that he poses a threat to an officer, the court must not make credibility determinations, but instead credit the evidence of the party opposing summary judgment and draw inferences in that party's favor. *Tolan v. Cotton*, 134 S.Ct. 1861, 1867-68 (2014). Here, the Court must accept Mr. Riley's statement and thus finds that Jeanetta's demeanor was not threatening, and draws the reasonable inference that Jeanetta did not place the knife in a threatening position. Rather, by displaying the knife, Jeanetta was merely complying with the officers' orders to show them her hands. These findings do not support a reasonable belief that Jeanetta posed an immediate threat to the officer.

*(e) Physical proximity*

Finally, Defendants rely on Jeanetta's close proximity to the officers as evidence the officers reasonably believed she posed an immediate threat to their safety. The evidence indicates that Jeanetta was ten-to-twelve feet away from Officer Valenzuela when he fired, and twelve to fifteen feet away from Officer Ziegler when he fired. *Johnson Aff.* ¶ 24, Dkt. 55-7; *Valenzuela Aff.* ¶ 22, Dkt. 55-8; *Ziegler Aff.* ¶ 22, Dkt. 55-9. Defendants have offered evidence that the officers' training indicates that a knife-wielding suspect is an immediate threat if she is within twenty-one feet of an officer. *Def's Statement of Material Facts* ¶ 34, Dkt. 55-2.

A categorical rule allowing officers to use deadly force upon a knife-wielding suspect any time the suspect is within twenty-one feet of an officer is clearly unreasonable. The Supreme Court has repeatedly rejected the use of categorical rules to justify deadly force. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. at 11 (holding the use of deadly force "to prevent the escape of all felony suspects, whatever the circumstances" to be constitutionally unreasonable.); *Harris v. Roderick*, 126 F.3d 1189, 1292 (1997) (holding that rules of engagement allowing officers "to kill 'any armed male' in the vicinity" of an ongoing law enforcement operation to be constitutionally unreasonable). Under the rule described by the Defendants, any officer could justify shooting any knife-wielding suspect as soon as the officer is within twenty-one feet of the suspect. The evidence here suggests that all three officers were within the zone of danger immediately upon arriving on the scene.[3] Thus, under the twenty-one foot rule, any of the three officers could have reasonably shot Jeanetta immediately upon arriving and exiting their vehicles, absent any additional effort to determine whether she posed a threat to themselves or others. Such a rule is clearly unreasonable.

Nor does the twenty-foot rule provide a reasonable basis to conclude, on these facts, that Jeanetta posed an immediate threat of harm to the officers. The twenty-one foot rule accounts for the amount of ground an average suspect can cover in the time that it

---

[3] Officer Ziegler parked his vehicle within twenty feet of Jeanetta. *See Ziegler Aff.* ¶ 12. Officer Johnson parked his vehicle slightly behind Officer Zeigler, but both he and Officer Valenzuela exited the vehicle and immediately began to approach. *Johnson Aff.* ¶ 13-14, Dkt. 55-7; *Valenzuela Aff.* ¶ 16, Dkt. 55-8.

takes an officer to "recognize a threat, draw his sidearm and fire two rounds." *Id*. In other words, the rule applies when an officer has not yet drawn his service weapon. *Id.* at 36. Here, all three of the officers exited their vehicles with weapons drawn. *Johnson Aff.* ¶ 14, Dkt. 55-7; *Valenzuela Aff.* ¶ 16, Dkt. 55-8; *Ziegler Aff.* ¶ 16, Dkt. 55-9. Further, despite already being within twenty-one feet of Jeanetta when he arrived, Officer Ziegler had time to holster his gun, draw his taser, and then re-draw his gun before he fired on Jeanetta from twelve feet away. *Ziegler Aff.* ¶ 12, 16, 21-22, Dkt. 55-9. Under these circumstances, the twenty-one foot rule does not support Defendants' contention that an officer would reasonably believe a suspect to be a threat based solely on his reaching a particular distance from the officer. *See Deorle*, 272 F.3d at 1283 (finding an officers use of less lethal force unreasonable when it was triggered by the suspect reaching a particular point).

Defendants point to *Chappell* for the proposition that a suspect's "close proximity" to an officer is a circumstance that supports a reasonable belief that the suspect poses an immediate threat harm. *Def's Br.* at 20, Dkt. 55-1; *Chappell* 585 F.3d 901. But while Jeanetta's proximity to the officers may be relevant to whether she posed a risk to the officers, it is not determinative. Defendants must show there were other objective facts that justified the officers' concerns that Jeanetta posed an immediate threat due to her proximity. *See Deorle*, 272 F.3d at 1272. In other words, the circumstances surrounding Jeanetta's proximity to the officers are relevant to determining whether she was a threat.

Because the factual circumstances at issue here are substantially different from *Chappell*, Defendant's reliance on that case is misplaced. In *Chappell*, two officers investigating an armed robbery executed a warrant to search the robbery suspect's home. 585 F.3d at 904. The officers entered a small room and found the suspect hiding in the closet. *Id.* The encounter took place in a "dark, cluttered, enclosed space." *Id.* at 911. Here, the officers confronted Jeanetta in an open area, from an initial distance of approximately twenty feet. *Ziegler Aff.* ¶ 12. The suspect in *Chappell* "closed within five to seven feet" while the officers were backed up against a wall and could not retreat, 585 F.3d at 911. Defendants argue that Jeanetta closed the distance between herself and the officers to within ten-to-twelve feet. But none of the officers held a fixed position upon arriving at the scene. *Linscott Decl.* Ex. C at 10, Dkt. 61-3. Instead, all three officers immediately began to close on Jeanetta. *Coon Aff.* Ex. D at 1:49, Dkt. 55-3; *Johnson Aff.* ¶ 13-14, Dkt. 55-7; *Valenzuela Aff.* ¶ 16, Dkt. 55-8. The officers continued to move towards Jeanetta throughout the encounter, despite the fact that doing so effectively foreclosed any option to retreat, *see Valenzuela Aff.* at ¶ 20, and despite the officers' training, which indicated Jeanetta might rapidly close the distance between them.[4] *Def's Statement of Material Facts* ¶ 34, Dkt. 55-2. Plaintiffs' expert contends that this approach

---

[4] Officers Valenzuela and Ziegler began to back away from Jeanetta immediately prior to shooting, firing as they reversed course. *Coon Aff.* Ex. B at 3:14-16, Dkt. 55-3.
(Continued)

was "reckless, counterproductive, and seriously substandard." *Callahan Decl.* ¶ 17, Dkt. 63.[5]

"Once a use of force is deemed reasonable under *Graham*, it may not be found unreasonable by reference to" some separate unreasonable act. *Mendez*, 137 S.Ct at 1547 fn. *. But, under *Graham's* totality of the circumstances analysis, courts are not barred from "taking into account unreasonable police conduct prior to the use of force that foreseeably created the need to use it." *Id.* In analyzing whether Jeanetta's proximity to the officers supported a reasonable belief that she posed an immediate threat of harm, the officers' approach is a relevant circumstance, not a separate act. The fact that Jeanetta was ten-to-twelve feet away from the officers when they fired is inextricably linked to both Jeanetta's approach towards the officers, and their approach towards her. Thus, the Court "must decide as a matter of law whether a reasonable officer could have believed that his conduct was justified." *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002) (*abrogated on other grounds by Mendez*, 137 S.Ct 1539).

A plaintiff cannot "establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Billington*, 292 F.3d at 1190. But evidence that an officer failed to consider other available tactics is

---

[5] A plaintiff cannot "avoid summary judgment by simply producing an expert's report that an officer's conduct leading up to a confrontation was imprudent, inappropriate, or even reckless." *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002) (*abrogated on other grounds by City of Los Angeles v. Mendez*, 137 S.Ct 1539 (2017)). The Court does not rely on Plaintiffs' expert report, but simply considers it as another piece of relevant evidence. *See Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) (directing courts evaluating the use of deadly force to examine all relevant evidence, including expert testimony).

relevant to analyzing whether she acted reasonably. *See Glenn v. Washington County*, 673 F.3d at 876. The Defendant officers knew when they initiated their approach that Jeanetta was potentially armed with a knife. *Coon Aff.* Ex. E at. 21:12:51, Dkt. 55-3. The evidence from both parties shows that a reasonable officer would know that the potential threat posed by a knife-wielding suspect increases with proximity. *Def's Statement of Material Facts* ¶ 34, Dkt. 55-2; *Callahan Decl.* ¶ 4.16, Dkt. 63. Defendants have offered no explanation for why it was necessary or reasonable to approach Jeanetta. In contrast, the Plaintiff have offered evidence that the officers' approach disregarded tactical considerations like cover, distance, and information gathering. *Callahan Decl.* ¶ 4.14, Dkt. 63. Taking these facts in the light most favorable to the Plaintiffs, a jury could find that a reasonable officer would not disregard other options and advance towards a knife wielding suspect if they believed she would necessarily pose an immediate threat of harm at a closer proximity, resulting in a foreseeable need to use of deadly force. As such, Jeanetta's mere proximity to the officers does not support a finding that the officers had a reasonable belief that she posed a threat to their  safety.

### (2)  Severity of the crime at issue

There is no evidence to suggest Jeanetta committed any crime before the officers arrived, nor do the Defendants argue that she did so. *Def's Reply* at 6, Dkt. 67 (describing the crime at issue as occurring after the officers arrived). Defendants argue, however, that Jeanetta's actions after the officers arrived constitute aggravated assault against a police officer under Idaho Code §§ 18-905, 18-909, 18-915.

Under Idaho law, aggravated assault requires "(1) an intentional, unlawful threat by word or act to do violence to the person of another; (2) with a deadly weapon or instrument; (3) coupled with an apparent ability to do so; and (4) doing some act which creates a well-founded fear in such other person that such violence is imminent." *State v. Pole*, 139 P.3d 729 (Idaho 2003). Whether the officers had probable cause to believe that Jeanetta's actions constituted aggravated assault depends on whether the "facts and circumstances within the officers' knowledge are sufficient to cause a reasonably prudent person to believe a crime has been committed." *Law v. City of Post Falls*, 722 F.Supp.2d 1283 (D. Idaho 2011) (citations omitted). As discussed above, there are genuine issues of material fact as to whether a reasonable officer would believe that Jeanetta posed an immediate threat. Thus, there is a question as to whether Jeanetta had the requisite intent or ability to do violence, or whether she took any action that would create fear of such violence, such that a reasonable officer would believe she had committed the crime of assault. At this stage the Court must resolve such questions in favor of the nonmoving party. *Tolan* 134 S.Ct. at 1868. Because a jury could conclude that a reasonable officer would find that no assault took place, this factor weighs against a finding that the Defendant officers acted reasonably in shooting and killing Jeanetta.

### (3)    Actively resisting the officers

The third factor identified in *Graham* for assessing the importance of the government interests at stake is "whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller*, 340 F.3d at 964. But "[t]he law does not

condemn someone to death anytime they resist arrest." *Billington* 292 F.3d at 1191. The use of deadly force may be justified only where the suspect poses an immediate threat of harm to the officers. *Harris*, 126 F.3d 1189, 1201 (1997). Thus, in analyzing whether the use of deadly force was reasonable, a suspect's resistance to arrest is relevant to the extent it provides evidence that the officers reasonably believed the suspect posed an immediate threat of harm. Where, as here, there was no actual arrest or attempted arrest, the suspect's resistance should still be analyzed as part of the totality of the circumstances.

Resistance is not a "binary state" but rather "it runs the gamut from the purely passive protester who refuses to stand to the individual who is physically assaulting the officer." *Bryan v. MacPherson*, 630 F. 3d 805, 830 (9th Cir. 2010). The Court evaluates Jeanetta's actions "based on this continuum of passive and active resistance." *Hesterberg v. United States*, 71 F.Supp. 3d 1018, 1030 (N.D. Cal. 2014). It is undisputed that Jeanetta failed to comply with the officers' orders to "drop the knife," and her repeated verbal noncompliance went beyond simply ignoring the officers' commands. But noncompliance and verbal aggression are not particularly bellicose under Ninth Circuit precedent. *See Bryan* 630 F.3d at 830. In *Bryan*, an unarmed suspect arguably refused to comply with an officers' order to stay in his car during a traffic stop, shouted gibberish, and repeatedly hit himself, but the court found that this was a "far cry from actively struggling with an officer." *Bryan* 630 F.3d at 830. In *Smith v. Hemet*, the suspect repeatedly refused the officers' orders to remove his hands from his pockets and place

them on his head, or behind his back. But the Court found that because he did not attack the officers or their dog, nor attempt to run from the officers, his resistance was "not particularly bellicose." 394 F.3d at 703. In *Mattos v. Agarano*, the suspect refused an order to get out of her car, and physically resisted the officers' efforts to remove her. 661 F.3d at 445. The Court found that her resistance was insufficient to support the officers' use of force. *Id.*

The above-mentioned cases balanced the use of non-lethal force against unarmed suspects. But their analysis of the continuum of resistance is instructive here, where the officers used deadly force against a woman holding a knife. Defendants argue this factor weighs in favor of finding the use of deadly force reasonable because Jeanetta "actively resisted the officers' commands during the entire confrontation," and refused to drop the knife. *Def's Br.* at 12, Dkt. 55-1. But Jeanetta did not verbally threaten or attack the officers, did not physically engage or resist the officers, and did not attempt to flee. Verbal resistance and refusal to comply with an order to drop a weapon may justify the use of some force, but standing alone are not sufficiently bellicose to justify the use of deadly force unless the officers had a reasonable belief that Jeanetta posed a threat. The Court has already found that a reasonable officer would not find Jeanetta's verbal aggression sufficient to support a belief that she posed an immediate threat, but that her refusal to comply with the officers' repeated orders to drop the knife is a factor that weighs in the officers' favor.

### (4) Additional factors

The Court must look to the totality of the circumstances, including such factors as whether the officers issued a warning before using lethal force, or whether the officers could have used less intrusive means to achieve the governmental interests. *Glenn*, 673 F.3d at 876.

### (f) Failure to warn

The failure to provide a warning, where feasible, that deadly force will be used is a factor in determining whether the use of such force is reasonable. *Bryan*, 630 F.3d at 831. Defendants argue that the officers' failure to warn Jeanetta does not render their use of force excessive because a warning of "'stop or I'll shoot' was not practical and would have been futile." *Def's Reply* at 9, Dkt 67. But the fact that a suspect may or may not comply is irrelevant so long as there is time to give a warning and no reason not to do so. *Bryan* 630 F.3d at 831. Defendants do not argue that they did not have time to give a warning, and provide no evidence that such warning was not practical or feasible. Instead, the evidence shows that the Defendant officers had time to give several commands to Jeanetta before firing their weapons, yet failed to give warning that they would shoot. *See* Hesterberg, 71 F.Supp.3d at 1032 (finding a warning was feasible where other commands were given that would have been transformed into a warning by simply adding "or I will tase you."). The failure to warn weighs against the reasonableness of the officers' use of deadly force.

### (g) Less intrusive means

Law enforcement officers are not required to use the least intrusive degree of force necessary to effect a seizure. *Scott*, 39 F.3d at 915. But officers must consider whether less intrusive methods are available, and act within a reasonable range of conduct. *Glenn*, 673 F.3d at 876. Defendants argue that the officers appropriately considered and rejected less intrusive means when Office Johnson attempted to draw his taser, and when Officer Ziegler transitioned from his gun to his taser and back to his gun as he approached Jeanetta. Defendants offer no evidence that Officer Valenzuela considered less intrusive means.

Objectively, however, the fact that Officer Ziegler's had his taser drawn and trained on Jeanetta indicates there was a "clear, reasonable and less intrusive alternative" to deadly force. *Bryan*, 630 F.3d at 831. Plaintiffs provided evidence that application of a taser would have likely incapacitated Jeanetta given her size, and that the tactical calculation favored Officer Ziegler's use of his taser, because Officer Valenzuela provided cover. *Callahan Decl.* at 4.21, Dkt. 63. *See Bryan*, 630 F.3d at 831 (finding more intrusive force unreasonable when having multiple officers on the scene changes the tactical calculus governing the necessary use of force). In addition, Officer Johnson's statement that he attempted to transition to his taser after determining that he "couldn't deploy a firearm" because there were no "avenues for a safe, responsible shot," is evidence supporting the reasonableness of using a taser under the circumstances. *Linscott Decl.* Ex. C at 6, 9, Dkt. 61-3. To support their contention that tasing Jeanetta was not a reasonable option, Defendants offer only an unsupported assertion that doing so "may

have proven unsuccessful." *Def's Reply* at 11, Dkt. 67. Because a jury could find that tasing Jeanetta was a clear, reasonable and less intrusive alternative, this factor supports a finding that the force was unreasonable. *Glenn*, 673 F.3d at 876.

### (5)    Totality of the Circumstances

Having reviewed the relevant evidence, the Court must now look to the totality of the circumstances to analyze whether the officers' use of deadly force was justified by the importance of the government interests at stake. *Miller* 340 F.3d at 964. As stated above, the use of deadly force is reasonable only where, at a minimum, the officers reasonably believed the suspect posed an immediate threat of harm to themselves or others. *Harris*, 126 F.3d at 1201. After construing the evidence in the light most favorable to the Plaintiffs, and drawing inferences and resolving factual disputes in their favor, the Court finds the circumstances of this case to be as follows:

While Jeanetta had made prior statements about wanting to kill people, the seriousness of those threats was noticeably undercut when the officers arrived on the scene and found her sitting in the van, with Shane Riley by her side. Though she was verbally aggressive with the officers after they arrived, she made no overt threats and a reasonable officer would not construe her statements to be threats. Jeanetta approached the officers at a quick pace, but not in an aggressive or threatening manner, and complied with an order to show her hands which resulted in her clearly displaying the knife she was carrying. While Jeanetta was in relatively close physical proximity to the officers, it is reasonable to infer that this was simply the result of her approaching them on their

command. In addition, Jeanetta's proximity to the officers resulted in part from their decision to approach her, undercutting any reasonable belief that she posed an immediate threat of harm.

Weighing against the Plaintiffs is the fact that Jeanetta refused to comply with the officers' commands to drop the knife. However, balanced against the totality of the circumstances, construed in the light most favorable to the plaintiffs, Jeanetta's refusal to drop the knife was not, on its own, sufficient to justify a reasonable belief that Jeanetta posed an immediate threat of harm to the officers. As such, the Court finds that the Defendant officers' use of deadly force was excessive and violated Jeanetta's rights under the Fourth Amendment.

Even assuming it was reasonable for the officers to believe that Jeanetta posed a threat of harm, the Court must analyze other relevant factors before determining that the use of deadly force is justified. While Jeanetta's refusal to drop the knife weighs in favor of such a finding, it is again outweighed by other relevant circumstances. First, the officers did not warn Jeanetta before using deadly force, although such a warning was feasible. The officers had a clear, reasonable, alternative to the use of deadly force by virtue of Officer Ziegler having his taser drawn and targeted on Jeanetta. No reasonable officer could believe that Jeanetta's verbal resistance justified the use of deadly force. And a jury could find that a reasonable officer would conclude that Jeanetta committed no crime.

After reviewing all the relevant circumstances, the Court finds that a jury could conclude that a reasonable officer would not believe that the use of deadly force was justified.

## 2. Clearly Established

The second prong of analysis in determining whether the Defendant officers are entitled to qualified immunity is whether Jeanetta's right to be free from the use of deadly force was clearly established. When evaluating whether the right was clearly established, the Court considers Supreme Court and Ninth Circuit case law existing at the time of the alleged acts. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the district court should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *See id*.

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... [but] in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft v. al–Kidd*, 563 U.S. at 741).

In other words, while the Court is not required to find a case with exactly the same facts, it must identify an existing case where an "officer acting under similar circumstances . . . was held to have violated the Fourth amendment." *White v. Pauly*, 137 S.Ct. 548, 551-52 (2017).

Unsurprisingly, neither party is able to point to a case with exactly the same facts as are at issue here, and the Court has found none. But such a case is not necessary to determine whether Jeanetta's right to be free from deadly force was clearly established. *See White*, 137 S.Ct. at 551 (citing *Mullenix*, 136 S.Ct. at 308). Instead, the Court must identify cases which turn on the same crucial circumstance – whether the defendant posed a risk to the officers. *See White*, 137 S.Ct. at 552.

It is clearly established that an officer's use of deadly force is reasonable only when the suspect poses an immediate threat to the safety of officers or others. *See Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994). The case law makes clear that "[l]aw enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officers or others . . . ." *Harris v. Roderick*, 126 F.3d 1189 (1997). As such, suspects that do not pose a serious risk of harm to an officer or others have a clearly established right to be free from the use of deadly force. The Ninth Circuit has repeatedly found that lethal, and even less-than lethal force, is unreasonable where the suspect does not pose an immediate threat to the officers, even where the suspect is armed. *See*, *Bryan*, *Glenn*. As such, a reasonable officer would know that unless Jeanetta posed an immediate threat, her right to be free from deadly force was clearly established.

Courts must make factual inferences in favor of the nonmoving party in determining whether the right at issue is clearly established. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). Defendants argue that Jeanetta did not have a clearly established right to be free from the use of deadly force because she posed an immediate threat to the officers who shot her. Plaintiffs' argue that she did not pose a threat to the officers, and thus her right to be free from the use of deadly force was clearly established. The Court has found that under the particularized facts of this case, a material dispute exists as to this crucial circumstance. Thus, the Court must make the reasonable inference that Jeanetta did not pose an immediate threat to the officers, and thus her right to be free from the use of deadly force was clearly established. *See Tolan*, 134 S.Ct. at 1868 (vacating a lower court's holding that the suspect's right was not clearly established because there was a genuine issue of material fact as to whether the suspect posed a threat to the officer who shot him). Accordingly,

## ORDER

**IT IS ORDERED:**

1.      Defendants' Motion for Summary Judgment on the issue of qualified immunity for Officers Ziegler and Valenzuela (Dkt. 55) is **DENIED**.

2.      Within ten (10) days after entry of this order, the parties are ordered to submit a stipulation as to new expert disclosure deadlines.

3.     Per the Stipulation Re: Summary Judgment (Dkt. 56), Defendants may contact the Court to schedule deadlines for hearing on the remaining portions of their motion for summary judgment.

DATED: September 29, 2017

B. Lynn Winmill
Chief Judge
United States District Court